UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GAYLE SHANEFF, as Administrator of the Estate of GEORGE SHANEFF, deceased | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 1:09-cv-1428-TWP-TAB ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

## ENTRY ON APPLICABLE LAW

This matter is before the Court on Plaintiff Gayle Shaneff's ("Plaintiff") Motion to Determine Law Applicable to her medical malpractice/wrongful death action brought against Defendant United States of America ("Defendant") under the Federal Tort Claims Act ("FTCA"). Specifically, Plaintiff argues that Illinois law applies to her claims as alleged in her Amended Complaint, whereas Defendant argues that it is premature to make this determination and, in any event, Indiana law applies. For the reasons set forth below, Illinois law applies and Plaintiff's Motion (Dkt. 49) is **GRANTED**.

A. Background

Plaintiff's husband, George Shaneff ("Mr. Shaneff"), sought treatment at the Illiana VA Medical Center (the "Hospital") in Danville, Illinois on April 22 and April 23, 2008. According to Plaintiff's Amended Complaint, Mr. Shaneff, a 68-year old man, presented warning signs of a heart attack. Plaintiff further alleges that, despite these signs, the Hospital failed to take necessary steps to diagnose and treat his condition and, consequently, Mr. Shaneff passed away

on April 25, 2008 from a myocardial infarction while at his home in Coatesville, Indiana.[1]
Plaintiff, the duly appointed administrator of her husband's estate, has now brought this FTCA suit against the Hospital for substandard medical care.

**B.      Is now the right time to tackle this issue?**

As a threshold matter, the Court must determine whether or not this issue is ripe for resolution. Defendant contends that a decision is premature, given that "Plaintiff has presented no facts to the Court to support the requested determination." (Dkt. 55 at 1). The Court respectfully disagrees and believes that Plaintiff's allegations and the attached affidavits are sufficient to establish the governing law. Defendant also argues that, for purposes of this case, the Court should abstain from ruling at this time because it "is not clear" that there is a conflict between Illinois law and Indiana law.[2] Indeed, a choice of law determination is only necessary when there is a difference in laws that would make a difference in the outcome. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898-99 (Ill. 2007) (citations omitted; noting three conflicts between Illinois law and Michigan law – liability, compensatory damages, and punitive damages).

The Court is not persuaded by Defendant's call to abstain. Indiana and Illinois have markedly different approaches to damages in medical malpractice cases. If Indiana law applies,

---

[1]To make its determination as to the applicable law, the Court relies on affidavits and the allegations that form the basis of Plaintiff's claim. Of course, this Order does not rule on any issues relating to actual liability or damages.

[2]To bolster this position, Defendant relies on *Estate of Sullivan v. U.S.*, 777 F. Supp. 695 (N.D. Ind. 1991), which held that Indiana's malpractice cap did not apply to a wrongful death action brought by an Indiana resident and arising out of the alleged negligence of physicians at a VA hospital in Arizona. Rather, Arizona malpractice law applied. *Id*. at 701-02. Simply stated, this case does not appear to support Defendant's position.

Defendant's liability will be capped at $1.25 million. *See* Ind. Code § 34-18-14-3; *Carter v. U.S.*, 982 F.2d 1141 (7th Cir. 1992) (government entitled to Indiana's cap on damages in claims subject to Indiana law). Illinois, by contrast, has no such cap. A ruling will help the parties assess the costs and benefits of proceeding to trial, potentially fostering settlement.

Moreover, in the event that this case proceeds to trial, a ruling will clarify what evidence is relevant to this case. For instance, under some circumstances, Indiana law bars non-dependent adult children from recovering for the loss of society in connection with the death of a parent. *See* Ind. Code § 34-23-1-1. Conversely, such recovery is permitted in Illinois. *See Cooper v. Chicago Transit Authority*, 505 N.E.2d 1239, 1243 (Ill. App. Ct. 1987). Also, under Illinois law, wrongful death claimants may recover for "grief, sorrow, and mental suffering," 740 ILCS 180/2, but no such recovery is permissible in Indiana. *See Pittsburgh, C., C. & St. L. Ry. Co. v. Brown*, 97 N.E. 145, 150 (1912). Thus, if Illinois law applies, Plaintiff may seek to introduce evidence of the grief and sorrow experienced by her and her surviving children. If Indiana law applies, however, such evidence becomes irrelevant and inadmissible. For these reasons, this issue is ripe for resolution, particularly given that a trial (currently set to begin on August 8, 2011) is not far off on the horizon.

**C.      Whose choice of law rules apply?**

The FTCA provides a remedy for personal injury caused by the negligent act of a government employee acting within the scope of his employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with *the law of the place where the act or omission occurred*." 28 U.S.C. § 1346(b)(1) (emphasis added). The "law of the place" encompasses choice of law determinations. *Richards v. U.S.*, 369 U.S. 1, 11

(1962). Here, the parties agree that Illinois choice of law rules apply.

**D.     Is Plaintiff entitled to a presumption that Illinois substantive law applies?**

Illinois has adopted the choice of law analysis embodied in the Restatement (Second) of Conflict of Laws ("Restatement (Second)"). *Townsend*, 879 N.E.2d at 898. Specifically, § 175 governs wrongful death actions, providing that:

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Comment b. to § 175 defines the "place of injury" as follows:

> b. *Place of injury*. <u>The place where the injury occurs is the place where the force set in motion by the actor first takes effect on the person. This place is not necessarily that where the death occurs</u>. Nor is it the place where the death results in pecuniary loss to the beneficiary named in the applicable death statute.

(Emphasis added). Illinois – the location of the alleged negligence precipitating Mr. Shaneff's death – is the place of the injury for purposes of this motion. This is where "the force set in motion by [Defendant] first [took] effect on [Plaintiff]."

Normally, a finding that Illinois is the place of the injury triggers a strong presumption that Illinois substantive law applies, and this presumption can only be overcome by showing that another state has "a *more* or *greater* significant relationship" to the occurrence. *Smith v. I-Flow Corp.*, 2010 WL 4872985, at *2 (N.D. Ill. Nov. 29, 2010). The commentary accompanying § 175 reinforces that a presumption is usually appropriate, providing that it is a "relatively rare situation" in which a "state other than that where the injury occurred" has the most significant relationship to the occurrence and the parties. Restatement (Second) § 175 (cmt.(d)); *Boomsma*

*v. Star Transp., Inc.*, 202 F. Supp. 2d 869, 874 (E.D. Wis. 2002).

However, because the conflict between Illinois and Indiana law relates to compensatory damages, it is unclear whether Plaintiff is entitled to any presumption at all. To understand why, the Court turns to Restatement (Second) § 178, which provides that "[t]he law selected by the application of the rule § 175 determines the measure of damages in an action for wrongful death." Additionally, comment b. to § 178 reads as follows:

> The choice of law principles stated in § 6 should be applied in determining the state whose local law will be applied to determine the measure of damages in a wrongful death action. <u>In general, this should be the state which has the dominant interest in the determination of this issue. The state of conduct and injury will not, by reason of these contacts alone, be the state which is primarily concerned with the measure of damages in a wrongful death action. The local law of this state will, however, be applied unless some other state has a greater interest in the determination of this issue</u>. In a situation where one state is the state of domicile of the defendant, the decedent and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages.

(Emphasis added).

Based on this language, Illinois courts have held that "although the Restatement (Second) provides that the place of the injury usually determines the rights and liabilities of the parties, any preference for applying law of the state in which the injury occurred *all but disappears when the conflict of laws involves the issue of damages in wrongful death actions*." *Schoeberle v. U.S.*, 2000 WL 1868130, at *10 (N.D. Ill. Dec. 18, 2000) (citation and internal quotations omitted; emphasis added). Tracking this reasoning, the presumption should "all but disappear" under the circumstances. But a vanishing presumption is not necessarily fatal to Plaintiff's argument. Pursuant to § 178, courts must still focus on ascertaining which state has the "dominant interest" in applying its law.

**E.      Whose substantive law applies?**

To make this determination, the Court turns back to the Restatement (Second). Specifically, the factors found § 145 and § 6 are used to ascertain which state has the most significant interest. *See Townsend*, 879 N.E.2d at 905 ("We now test this presumptive choice against the principles of section 6 in light of the contacts identified in section 145(2).").

Generally, Illinois courts begin with § 145. *Id.* (citations omitted; refusing to embrace a concrete sequential approach). Under § 145(2), courts weigh four factors in determining the state with the most significant relationship to the tort claim: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and/or place of business of the parties; and (4) where the parties' relationship is centered. Most of the contacts favor Illinois.

As touched on above in conjunction with § 175, Illinois was the location of the injury, its precipitating conduct, and where the parties' relationship was centered. Usually, the place of the injury is the "highest scorer" on the most significant relationships test. *Boomsma*, 202 F. Supp. 2d at 875 (applying Illinois choice of law rules and citing *Spinozzi v. ITT Sheraton*, 174 F.3d 842, 844 (7th Cir. 1999)). At times, however, Illinois courts have deemed this factor inconsequential: "when dealing with the issue of compensatory damages, there is no basis for a presumption that the state where the injury occurred is more interested in the question of compensatory damages than the domiciliary state of the decedents and their survivors." *Schoeberle*, 2000 WL 1868130, at *10. Nonetheless, the present case is distinguishable from *Schoeberle*, which involved a plane crash, making the location of the accident somewhat fortuitous. *See id.* at *11 ("The law of the state of injury should give way where the place of the

6

accident was somewhat fortuitous, and the domiciliary state is the state of all the decedents and their survivors."); *see also In re Aircrash Disaster Near Roselawn*, 926 F. Supp. 736, 742 (N.D. Ill. 1996) ("several courts have observed that often the location of a plane crash is largely fortuitous and hence that location is not given its usual weight in the choice of law analysis"). Here, by contrast, the Hospital is a brick and mortar building located in Illinois and, thus, there is nothing fortuitous about the location of the injury and its precipitating conduct. Similarly, the Hospital entered into relationships with its patients, like Mr. Shaneff, in Illinois. In fact, Mr. Shaneff had visited the Hospital four times since December 18, 2006.[3]

The only § 145 factor weighing in favor of Indiana law is the domicile of the decedent. Indeed, in some instances, Illinois courts have treated this factor as paramount, if not altogether dispositive. *See In re Aircrash Disaster Near Roselawn*, 948 F. Supp. 747, 756 (N.D. Ill. 1996) (hereinafter, "*Roselawn IV*") ("In the area of compensatory damages . . . much of the existing authority supports the application of the law of the injured person's domicile, on the ground that that state has the greatest interest in ensuring that its residents are appropriately compensated for their injuries."); *Schoeberle*, 2000 WL 1868130, at *10 (applying Illinois choice of law rules to determine that Wisconsin law, the domicile of the decedents, should apply instead of Iowa law, the location of the plane crash). But, once again, these decisions, while thorough and well-reasoned, involved place crashes with fortuitous injury locations. As discussed, the present circumstances are different.

---

[3]Mr. Shaneff also visited the VA Medical Center in Indianapolis 17 times between September 17, 2011 and November 17, 2006. This fact arguably reduces the strength of this factor. Nonetheless, the Court deems it significant that Mr. Shaneff visited the Illinois hospital four times – including right before his death – from December 2006 until his death. On balance, this factor still cuts in favor of Illinois law.

7

At bottom, because § 145 instructs courts to weigh four factors, it would be an error to merely rubber stamp the decedent's domicile as the dispositive factor. When considered cumulatively, the balance of factors tilts in favor of applying Illinois law.[4]

The Court must next consider the policy factors identified in § 6, which provides as follows:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predictability and uniformity of result, and
>>
>> (g) ease in the determination and application of the law to be applied.

None of these factors strikes the Court as a game-changer. If anything, the § 6 factors favor the application of Illinois law. First, it is only logical that an Illinois Hospital would justifiably

---

[4] This determination arguably stands in contrast to a case that Defendant relies on: *McDaniel v. U.S.*, 2008 WL 4516317 (S.D. Ill. Oct. 3, 2008) (applying Illinois substantive law in case involving Illinois resident who died in Illinois after alleged malpractice occurred in Missouri). The Court, however, is not sufficiently persuaded by the reasoning employed in *McDaniel*. Moreover, *McDaniel* is distinguishable. The court determined that the injury itself occurred in Illinois and the parties agreed that Missouri choice of law governed whether Illinois or Missouri substantive law applied. *Id.* at *2.

expect Illinois law to be applied when it is sued for malpractice. Second, the basic policies underlying tort law support the application of Illinois law, particularly in light of Illinois' vigorous opposition to "arbitrary" damages imposed by caps. *See Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1076 (Ill. 1997) ("We simply determine that it does not follow that the difficulty in quantifying compensatory damages for noneconomic injuries is alleviated by imposing an arbitrary limitation or cap on all cases. . . [t]here is universal agreement that the compensatory goal of tort law requires that any injured plaintiff be made whole."). Third, Illinois law would certainly apply to liability issues in this case, given the "strong presumption" in its favor. For consistency and ease of application, it makes sense to also apply Illinois law to damages.[5]

Finally, the Court considers the particular interests of both Illinois and Indiana. "A state's laws regarding damages generally rest on two sometimes competing goals: the compensation of resident plaintiffs' injuries, and the protection of resident defendants from excessive claims." *Roselawn IV*, 948 F. Supp. at 758. Admittedly, Illinois does not have a strong interest in ensuring that a non-resident like Mr. Shaneff is made whole. *Id.* ("A state where an injury occurs has very little interest in insuring the compensation of the victim or protecting the tortfeasor when neither one is a state resident."). But, on the flip side, Indiana has no meaningful interest in limiting the damages awards against an out-of-state entity. *See Estate of Sullivan v. U.S.*, 777 F. Supp. 695, 702 (N.D. Ind. 1991) ("Indiana has little or no interest in controlling the

---

[5]This is merely one consideration. The Court's analysis does not turn on this issue. On this point, the Court is cognizant of "depecage," a legal term of art (and the French word for "dismemberment"), which refers to the process of determining choice of law on an issue-by-issue basis. *Boomsma*, 202 F. Supp. at 874 (contemplating that one state's law could apply to compensatory damages and another state's law could apply to punitive damages).

9

award of damages against the United States as a result of the negligence of government employees which took place in [a different state]."). Moreover, Illinois has an interest in ensuring that the patients at Illinois VA hospitals receive quality care. All in all, the § 6 analysis is essentially a wash. All factors being considered, the more compelling analysis favors applying Illinois law. In the end, § 6 does not alter the Court's finding that Illinois law is appropriate.

**F.	Conclusion**

For the reasons set forth above, Illinois law applies and Plaintiff's Motion (Dkt. 49) is **GRANTED**.

Date: 05/13/2011

*[signature]*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

**Jerry Avan Garau**
FINDLING GARAU GERMANO & PENNINGTON
jgarau@gghplaw.com,tlux@gghplaw.com


**Jeffrey L. Hunter**
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov,shaq.shockley@usdoj.gov,lin.montigney@usdoj.gov